### Roy Burman v. The State.

#### No. 1840.  Decided June 5, 1912.

**1.—Murder—Manslaughter—Charge of Court—First Meeting.**

Where the evidence, with reference to insulting conduct to defendant's wife by deceased, showed that the killing took place after the first meeting of the parties, but also showed that there was such conduct subsequent to said first meeting, the court perhaps properly submitted the issue of manslaughter; yet appellant's conduct seemed to suggest that he was cool and collected at the time he shot the deceased.

**2.—Same—Evidence—Manslaughter—Rebuttal.**

Where, upon trial of murder, the defendant sought to reduce the killing to manslaughter by introducing testimony as to the statement, acts and conduct of deceased, to show that the latter was the moving cause of the separation between defendant and his wife, there was no error to permit the State to introduce acts and conduct of deceased which would tend to show that he was not the cause of such separation.

**3.—Same—Evidence—Conversation—Ill-Feeling.**

Where, upon trial of murder, everything said about the defendant by deceased was admitted in evidence to show the state of feelings of deceased towards the defendant, the fact that deceased desired an abortion to be produced upon his daughter would add no strength to his statement that he would rather that she had a child by the coalest black negro in the State than one by defendant, and there was no error in excluding this statement.

**4.—Same—Argument of Counsel.**

Where the argument of State's Counsel was made to the court, and not to the jury, and no special charge was requested to withdraw it, there was no reversible error.

**5.—Same—Evidence—Irrelevant Testimony.**

On trial for murder, where the defendant sought to show that the deceased was the cause of the separation between the defendant and his wife, and the court had admitted the declaration of deceased that he was glad defendant's wife (his daughter) had come home and he was never gladder of anything in his life and he wanted to get a divorce for her as quick as he could, there was no error in excluding his additional statement that he was willing to marry as a pure business matter (the deceased being a widower).

**6.—Same—Self-Serving Statements.**

Upon trial of murder, there was no error in excluding testimony giving the reasons why defendant mistreated his wife, as this was self-serving, the State not being permitted to show any such mistreatment.

**7.—Same—Evidence—Bias of Witness.**

On trial of murder, there was no error in asking defendant's witness if the uncle of defendant had not given her a pair of shoes, to show the bias of the witness.

**8.—Same—Charge of Court—Apparent Danger.**

Where, upon trial of murder, the court had given a full charge on the question of threats and apparent danger, there was no error in refusing a special charge that if deceased was about to make an attack on defendant it

would be wholly immaterial that defendant was in no danger from such an attack, as such a charge was misleading.

### 9.—Same—Charge of Court—Manslaughter.

Where, upon trial of murder, the court in his charge on manslaughter submitted the law as applicable to the evidence more favorable than the refused special charge, there was no error.

### 10.—Same—Threats—Charge of Court—Self-Defense.

Where, upon trial of murder, the evidence was that the deceased had made serious threats against the life of the defendant which were communicated to the latter, there was no error in refusing a special charge that it was not necessary for the jury that such threats were seriously made.

### 11.—Same—Sufficiency of the Evidence—Manslaughter.

Where, upon trial of murder, it was extremely doubtful whether the testimony raised the issue of manslaughter, but the court nevertheless submitted that issue together with all the law applicable to the facts, and the evidence sustained the conviction, there was no error.

### 12.—Same—Adequate Cause—Manslaughter.

Even if adequate cause exists, the mind must be affected in a way to render it incapable of cool reflection, or manslaughter is not in the case.

Appeal from the District Court of Wise. Tried below before the Hon. J. W. Patterson.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*R. E. Carswell* and *Robert Carswell,* for appellant.—As to question of admitting testimony that defendant's uncle gave witness a pair of shoes: Swain v. State. 86 S. W. Rep., 335; Davis v. State, 143 S. W. Rep., 1161.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—This is the second appeal in this case, the opinion on the former appeal being found in the 61 Texas Crim. Rep., 51, 133 S. W. Rep., 1045; it is also a companion case to that of Ferrell Burnam, the opinion in the latter case being reported in 61 Texas Crim Rep., 616, 135 S. W. Rep., 1175. On this trial appellant was again convicted of murder in the second degree and his punishment assessed at twenty years confinement in the State penitentiary.

The State in this case proved by Jess McMillan that at the time of the shooting deceased was sitting with his hands on a desk in front of him; that appellant walked up behind deceased and shot him the first time about the crown of the head, and in the back part thereof; that appellant fired two more times, shooting deceased as he fell backwards. The attending physician says the first shot entered to the left of the central part of the head and ranged downward in the neck, the next entered the front part of the head and ranged backward and downward, while the other passed through the lower lip and ranged

upward and backward. Other witnesses for the State in the main corroborate McMillan, and all the testimony shows that deceased was sitting down and fell backward when shot, the only difference in this respect between the testimony for the State and defendant being the defendant says, as he walked up, deceased looked around at him, let his right hand slip off the bench down by his right side, out of sight, and he thought deceased was going to shoot him, when he drew his pistol and fired. Miss Lissenby corroborates defendant in stating that deceased took his hand off the desk and put it down by his right side just prior to the time the first shot was fired. It was also shown that deceased was armed on this occasion, after his death the pistol being found inside the waistband of his pants.

Witnesses for appellant testify to threats made by deceased, and to communicating these threats to defendant prior to the night of the homicide, and the evidence would indicate a bad state of feeling existing between them. Appellant had married a daughter of deceased, moved in deceased's home, and had planted a crop on deceased's place, Deceased was a widower, and had several children younger than appellant's wife, residing in the house. Trouble arose between deceased and appellant over the conduct of the latter toward the children, and deceased had moved out of the house and carried the younger children to their grandmother, leaving appellant and his wife in possession of the home place. After some time, appellant requested his uncle to sell the crop and he decided to move to Clay County. He and his wife went to Clay County and appellant made arrangements to live with his, appellant's, father in Clay County, and he and his father returned to Wise County to haul his household furniture. Appellant and his wife began to pack, when a girl came and told appellant's wife that her father desired to see her. She went to see her father and never returned to her husband. Appellant then went to Clay County with his father and remained some days, but he says his uncle was unable to sell the crop, and he returned to Wise County to work his crop, bringing with him his father's pistol, to protect himself, which was the weapon used on the occasion of the death of Mr. Mosier. After appellant's return, Mr. Mosier and appellant had met once before the night of the killing, but neither had anything to say to the other. The State contends that appellant walked in the church and deliberately shot deceased from behind, when deceased had his hands in open view on a desk, and after he had killed him, walked out of the church, reloaded his pistol and said in answer to a question: "There is a man taken a man's wife away from him a little while back; don't think he will do it any more." Appellant's theory is that deceased saw him (appellant) come in the church when he dropped his right hand off the desk out of appellant's sight, and in the light of the threats communicated to him, this was such a demonstration as to lead him to believe his life was in danger, and he was justified in shooting; that if not justified, that deceased was the cause of his wife leaving

him, and this with the remarks of deceased about appellant, as communicated to him, was sufficient to reduce the offense to manslaughter. There would be more strength in this latter contention if this had been the first meeting after the separation, but the evidence discloses unquestionably, in fact, appellant admits he saw deceased after the separation about a week before the killing, and they were in a few feet of each other. In fact, appellant states that on this first occasion deceased started towards him when he walked away, and it seems if deceased's conduct in regard to the separation was the moving cause of the killing, it would have occurred on this occasion, for deceased's wife was with her father at that time, as well as on the occasion when appellant did the killing, and there was nothing more in this respect to cause anger than on the former occasion. However, the court in his charge submitted manslaughter and perhaps properly so under the evidence that after he had met deceased, he was informed by John Hood subsequent to that time that deceased had said he would shoot appellant before his wife should live with him, and submitted it on the basis of every conceivable cause suggested by the evidence in the case; the jury finding against this contention.

The testimony of events just after the killing seems to suggest that appellant on this occasion was cool and collected, and would rebut a presumption of that state of mind essential to reducing an offense to manslaughter. But appellant insists that the court committed several errors in admitting and rejecting testimony as bearing on the issue of manslaughter. As defensive matter in this respect, appellant introduced a number of witnesses and adduced testimony tending to show that deceased worked to bring about and was the cause of the separation between appellant and his wife. The State then introduced in rebuttal Wes Stephens and Joel Barnes, who testified that on the day appellant and his wife separated, deceased sent for them, and requested them to advise his daughter in regard to the matter. Both stated they advised against a separation, and that deceased approved what they said and told his daughter that they would not advise her wrong, and he thought they had given her good advice. If it was an issue in the case, and appellant was entitled to introduce testimony as to the statements, acts and conduct of deceased for the purpose and to show that he, deceased, was the moving cause of the separation, then certainly the acts and conduct of deceased which would tend to show that he was not the cause, would be admissible to be given such weight as the jury deemed it entitled. And as bearing on this question the defendant was permitted to prove by Dr. Rogers that deceased had said to him (at the time of inquiring whether or not his daughter was pregnant) "that he would rather his daughter would bring a child from the coalest black nigger in the State, than bring a child by Roy Burnam" (appellant) and called him a damn son-of-a-bitch. All the conversation was admitted, except that portion in which deceased asked if the doctor "could not give her something to

make her sickness come around," and the doctor's answer. Everything said about appellant was admitted, and sufficient was admitted to show the state of feelings of deceased towards appellant, and the fact that deceased desired an abortion to be produced would add no strength to the statement that "he would rather she had a child by the coalest black nigger in the State than one by appellant." In the case of Ferrell Burnam, 61 Texas Crim. Rep., 616, 135 S. W. Rep., 1175, this court held that it was not error to exclude this testimony.

The remarks of the counsel complained of in bill No. 2 should not have been made, but the court in his qualification shows the remarks were made to the court, and not to the jury; and as appellant prepared and requested no special charge in regard thereto, it presents no such error as would necessitate or call for a reversal of the case.

The testimony complained of in bill No. 4 was also held to be inadmissible in the Ferrell Burnam case. The most that could be said of it would be that it would tend to show that deceased was aware of the fact, prior to the time of the separation, that the separation would take place. It would and could not aid in arriving at the conclusion whether or not deceased was the cause of the separation, and this witness was permitted to testify that deceased told him that "Callie had come home, and he was never gladder of anything in his life, and stated he wanted to get a divorce for her as quick as he could. The other portion excluded would add no strength to the portion admitted, and the fact that deceased was willing to "marry as a pure business matter" would not be admissible. The deceased was not on trial, and only such parts of his acts and conduct would be admissible as would show his state of feelings towards appellant, whether or not he was the cause of the separation, or would in some way justify appellant in the act of killing. Other matters in regard to deceased would be immaterial.

The court did not err in excluding the testimony recited in bill No. 5. The State was not permitted, if it could have done so, to show any mistreatment of his wife by appellant, and if appellant in his testimony found it necessary to recite such matters, his reasons for so doing would be but selfserving.

In bill No. 6 it is complained that the State was permitted to ask Myrtle Lissenby, witness for defendant, if Jim Burnam, an uncle of defendant, had given her a pair of shoes. If it was a question of whether or not Jim Burnam had attempted to bribe the witness, the defendant not being connected with it, it would perhaps have been inadmissible, but the objections were that it was calculated to prejudice defendant with the jury and to impeach the testimony of the witness. The relations existing between the parties, the state of their feelings, their bias and prejudice, have always been held to be admissible, and if the testimony was adduced to show the relation existing between the Burnam family and the witness, it would be admissible for that purpose. Earles v. The State, 64 Texas Crim. Rep., 37, 142 S. W.

Rep., 1181, and Pope v. The State, 65 Texas Crim. Rep., 51, 143 S. W. Rep., 611.

The appellant requested a charge on the appearance of danger, concluding it: "And in this connection you are instructed that the fact, if it is a fact, that said Mosier was not about to make an attack upon the defendant and that defendant was in no danger from such an attack, would be wholly immaterial." This part would have been calculated to mislead the jury, and the court fully presented the case in instructing the jury: "If you believe and find from the evidence that the defendant, Roy Burnam, did shoot and kill John Mosier, and if you believe that before that time said John Mosier had threatened to kill the defendant or to do him serious bodily injury, and that the defendant knew or had been informed of such threats, and if you believe that at the time the defendant so shot the said John Mosier, he, the said Mosier, by some act then done, manifested an intention to execute such threats so made, or if you believe that by some act done by the said John Mosier, it reasonably appeared to the defendant, viewed from his standpoint, that the said Mosier was then about to execute such threats so made, or if you have a reasonable doubt as to whether it reasonably appeared to the defendant, viewed from (his) standpoint, that the said Mosier, by some act then done, manifested such an intention to execute the threats so made, you will find the defendant not guilty," and in addition to this gave a charge on appearance of danger to which no complaint is urged.

The court in his charge on the issue of manslaughter, instructed the jury: "If you believe from the evidence that the defendant shot and killed John Mosier, in Wise County, Texas, about the time charged in the indictment, and you further believe from the evidence that at the time he did so he was separated from his wife, and if you find that the defendant believed, and had reasonable grounds for believing, that the said John Mosier had been the means of separating him, the defendant, and his wife, and if you believe the defendant when he entered the school house saw John Mosier, the deceased, and his (defendant's) wife sitting there, and if you believe said facts and the circumstances thereof were sufficient to render the mind of a person of ordinary temper incapable of cool reflection, and if you believe that by reason of these facts the mind of the defendant was rendered incapable of cool reflection, on account of fear, anger or resentment thereby engendered, and that in such condition of mind, he shot and killed John Mosier, and that he was not justified or excused for such killing under the rules of self-defense as hereinafter given you in charge; or if you believe from the evidence that the defendant, when he shot and killed John Mosier, if he did shoot and kill him, believed, from what he knew and had heard said of Mosier's feelings and disposition towards him, that the said Mosier was then about to draw a weapon to attack him, and if you believe said facts and circumstances were sufficient to render the mind of a person of ordinary

temper incapable of cool reflection, and if you believe the mind of the
defendant was thereby rendered incapable of cool reflection, by reason
of fear, anger or resentment, and if, in such state of mind, he shot
and killed John Mosier, and if he was not justified in so doing under
the law of self-defense as hereinafter explained; or if you believe the
defendant shot and killed John Mosier, in Wise County, Texas, about
the time charged in the indictment and that he was not justified in
so doing, and if you believe, from the circumstances above set out in
this subdivision of the charge, or either of them, in connection with
all the other facts and circumstances in the case, that the mind of the
defendant was not capable of cool reflection, and if you believe that
such facts and circumstances were sufficient to render a person of ordi-
nary temper incapable of cool reflection, you will find the defendant
guilty of manslaughter and so say in your verdict, and assess his
punishment at confinement in the penitentiary for a term not less than
two nor more than five years."

As before said this fully presented the law as applicable to the
evidence, and there was no error in refusing the special charges, for it,
if anything, is more favorable to defendant than the charges requested.

The defendant requested the court to charge the jury: "You are
instructed as part of the law of the case to be considered along with
the main charge, that in order to excuse the defendant where threats
have been made against him, it is not necessary for you to believe
that the threats were seriously made, but if you believe that the de-
fendant believed they were seriously made, he has a right to act in his
defense as above charged and you will acquit the defendant." In a
case where the evidence raised the issue as to whether the threats were
seriously made, a charge presenting this theory should be given, but
it should not authorize an acquittal because of threats alone. How-
ever, in this case there is no evidence raising that issue. All the
threats testified to, are testified to as being seriously made, and where
there is no evidence raising an issue it is proper to refuse to submit
it. As before stated, this is the second appeal in this case, and under
all the circumstances, we think there is no matter complained of that
could have affected the result of the case. It is a matter of extreme
doubt, when we take the testimony, at the time of the killing, if it
raises the issue of manslaughter. When we consider that appellant
had met deceased since the separation once before the time of the
shooting, and the witnesses would have appellant acting in a calm,
deliberate manner, shoving deceased's hands down that he might make
the last shot a deadly one, loading his pistol immediately thereafter,
addressing his friends, saying: "Hello, how are you," etc., and there
being very little, if any, evidence that would indicate appellant's mind
was in that condition essential to reduce the offense to manslaughter,
we do not think the matters complained of present any error. Even
if adequate cause existed, the mind must be affected in a way to

render it incapable of cool reflection, or manslaughter is not in the case. The testimony almost, if it does not conclusively, rebuts such a presumption.

Judgment is affirmed.

*Affirmed.*